**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MELISSA STAMILE, KENDRA HINDS,
SHANNON PAIZ, COURTNEY BRACCIA,
and JESSICA LITTLE,

                            Plaintiffs,

                - against -

COUNTY OF NASSAU, MARC BARBER,
individually and in his Official Capacity, C.O.
"JOHN" RAVIZEE, individually and in his
Official Capacity, SHERIFF MICHAEL
SPOSATO, individually and in his Official
Capacity, C.O.'s "JOHN DOES" #1-10,
individually and in their Official Capacities,
(the name John Doe being fictitious, as the
true names are presently unknown),

                           Defendants.
-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

CV 10-2632 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

      Presently before the Court is the motion of Defendants County of Nassau and Keith Ravizee[1] (hereinafter "moving Defendants") seeking to stay all proceedings in this action, including discovery, until the final resolution of the criminal prosecution currently pending against Defendant Mark Barber.[2] *See* DE 21. Plaintiffs oppose the motion on three grounds:

---

[1]    Plaintiffs named Defendant Keith Ravizee as "John" Ravizee in the Complaint due to the lack of knowledge as to his first name . *See* Compl. ¶ 10.

[2]    Defendant Michael Sposato subsequently joined in this motion through his counsel's declaration in support of the motion for a stay. *See* DE 27 (Declaration of Paul F. Millus Esq. In Supp. of Mot. for a Stay of Action ("Millus Decl.")). As for Defendant Barber, he is proceeding in this civil action *pro se*. *See* DE 31. There is no indication that he opposes a stay of this action.

(1) it is premature, (2) it is speculative; and (3) there is a significant amount of discovery that can be accomplished without Defendant Barber's participation.[3] *See* DE 28. This motion has been referred to me by Judge Feuerstein for a Report and Recommendation. *See* Electronic Order of Sept. 17, 2010. Based upon my review of the arguments advanced by both parties in their written submissions as well as the applicable law, I respectfully recommend to Judge Feuerstein that the Defendants' motion to stay be GRANTED.

## II.  FACTUAL BACKGROUND

The Court shall summarize only those facts and prior proceedings necessary to an understanding of the issues raised on the pending motion.

### A.  Civil Action

Plaintiffs Melissa Stamile, Kendra Hinds, Shannon Paiz, Courtney Braccia and Jessica Little ("Plaintiffs") filed a Complaint against various named and unnamed Defendants pursuant to 42 U.S.C. §§ 1983 and 1988 alleging violations of their constitutional rights. *See* Compl. ¶ 1. At the time of the acts giving rise to the Complaint, the Plaintiffs were female inmates at the Nassau County Correctional Center ("NCCC"). Defendant Barber served as a Grievance Officer at NCCC receiving complaints from inmates about medical care and quality-of-life issues. *Id.* ¶¶ 16-18. Plaintiffs allege that from August 2007 through March 2009, Defendant Barber abused his powers as Grievance Officer and engaged in inappropriate relationships with female inmates, including the Plaintiffs. *Id.* ¶ 20. Specifically, the Complaint alleges that Barber provided

---

[3]  The Court notes that Plaintiff's opposition to Defendants' motion to stay the civil action (which was filed as a formal motion with a memorandum of law and corresponding declarations), was a three-page letter citing two cases, neither of which addresses the factors a court must analyze in deciding a motion for a stay.

contraband and services to the inmates, and in return, he demanded that the inmates perform sexual favors for him. *Id.* ¶¶ 21-22. Each Plaintiff asserts particular instances where Defendant Barber made unwanted and improper sexual comments and advances (*id.* ¶¶ 42-45, 62-63, 78-82, 125-128, 133-134, 140-142 ), engaged in inappropriate touching (*id.* ¶¶ 87, 98-104, 129-121) and sexual intercourse (*id.* ¶ 64).

Plaintiffs further aver that many other staff members at NCCC knew about Defendant Barber's conduct, but simply looked the other way and did nothing. *Id.* ¶ 28. In that context, Plaintiffs allege that Barber's misconduct was a reflection of a larger, systemic failure of top-level prison officials, including Defendant Sheriff Sposato, to properly respect and safeguard the rights of female inmates. *Id.* ¶¶ 29-30.

### B. Criminal Proceeding

On December 30, 2009, Defendant Barber was arrested and arraigned on a fifty-eight count felony complaint which included charges of three counts of Rape in the Third Degree, ten counts of Sexual Abuse in the Second Degree, three counts of Forcible Touching, and thirty-five counts of Official Misconduct, among others. *See* Compl. ¶¶ 156-157; Bernadette K. Ford Aff. in Supp. of the Issuance of a Stay ("Ford Aff.") ¶ 2 and Ex. A. Defendant Barber entered a plea of not guilty on May 24, 2010. *Id.*

Defendant Barber stands accused of engaging in unlawful sexual conduct which involved giving unwarranted privileges and contraband items as encouragement or reward for such behavior with at least six female inmates at NCCC. *Id.* ¶ 3. Over a four-month period beginning in April 2010, the matters set forth in the felony complaint, along with additional charges, were presented to the Grand Jury in Nassau County. *Id.* ¶ 4. On July 27, 2010, the Grand Jury took

action on the matter.[4] *Id.* The Nassau County District Attorney's Officer later informed Defendant Nassau County that Barber was to be arraigned on an Indictment on August 31, 2010. *See* Defs.' Reply Mem. of Points and Authorities in Supp. of Mot. for Stay ('Defs.' Reply") at 4 n.1.

All of the Plaintiffs were interviewed by the District Attorney's Office and testified as witnesses in the criminal proceeding. Compl. ¶¶ 159-60. The Plaintiffs were among the "Confidential Witnesses" referred to in the felony complaint. *See* Ford Aff. ¶ 5.

## III. STANDARD OF REVIEW

Although not constitutionally required, it is clear that a court has the authority to stay a civil action pending the outcome of a related criminal proceeding. *See, e.g., Kashi v. Gratos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal quotation marks and citations omitted); *Bristol v. Nassau County*, No. CV 08-3480, 2010 WL 1660238, at *1 (E.D.N.Y. Apr. 22, 2010) ("A district court has the discretionary authority to stay a civil action pending the resolution of a parallel criminal proceeding when the interests of justice so require.") (quoting *Johnson v. New York City Police Dept.,* No. 01 Civ. 6570, 2003 WL 21664882, at *2 (S.D.N.Y. July 16, 2003)); *Estes-El v. Long Island Jewish Med. Ctr.*, 916 F. Supp. 268, 269 (S.D.N.Y. 1995) ("It is well settled that the court may (and indeed, should) stay a federal Section 1983 action until resolution of parallel state court criminal proceedings."); *Volmar Distribs., Inc. v. New York Post Co.,* 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("The strongest case for granting a

---

[4] On July 30, 2010, the date Assistant District Attorney Ford's affirmation was submitted, she was not permitted under New York law to disclose what action was taken until the indictment was filed with the Couny Court of Nassau County. Ford Aff. ¶ 4.

4

stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter.").

However, a stay of a civil action is considered to be an extraordinary remedy. *See Crawford & Sons, Ltd. v. Besser,* 298 F. Supp. 2d 317, 319 (E.D.N.Y. 2004). Given that fact, courts consider and balance the following factors to determine whether a stay should be granted: "(1) the extent to which the issues in the criminal action overlap with those in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously," weighed against the prejudice to plaintiffs caused by the delay; "(4) the private interest of, and burden on, the defendant; and (5) the interests of the courts and the public." *In re Air Cargo Shipping Services,* No. 06-MD-1775, 2010 WL 5027536, at *1 (E.D.N.Y. Dec. 3, 2010) (citing *Crawford & Sons,* F. Supp. 2d at 319); *see also Parker v. Dawson,* Nos. 06-CV-6191, 06-CV-6627, 07-CV-1268, 2007 WL 2462677, at *3 (E.D.N.Y. Aug. 27, 2007). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar,* 152 F.R.D. at 39.

## IV. DISCUSSION

As a threshold matter, the Court is compelled to address Plaintiffs' contentions that the moving Defendants' motion is both premature and speculative. First, Plaintiffs argue that Defendants' motion is premature since Defendant Barber has not yet appeared in this civil action. *See* Pls.' Opp. at 1. Plaintiff maintains that once Barber makes an appearance, his counsel will then have an opportunity to raise any concerns regarding Barber's Fifth Amendment privilege. *Id.* The moving Defendants counter that the reason for Barber not appearing in this action is Plaintiffs' failure to effect proper service on him. *See* Defs.' Reply at 2. The Court deduces that

5

there may be some validity to the moving Defendants' latter argument based upon the Plaintiffs' subsequent execution of service on Defendant Barber on August 30, 2010. *See* DE 30. Nonetheless, this argument is now moot since Defendant Barber has appeared in this action by filing an Answer on September 14, 2010. *See* DE 31.

Plaintiffs also question (in passing, by footnote) whether the moving Defendants even have standing to make this motion since they do not represent Defendant Barber. *See* Pls.' Opp. at 1 n. 1. Defendants' primary contention is that a stay is necessary in order to preserve the Fifth Amendment privilege against self-incrimination to which Barber is entitled without the consequence of a potential adverse inference being drawn against either Barber or the moving Defendants. *See* Defs.' Mem. of Points and Authorities in Supp. of Mot. for Stay ("Defs.' Mem.") at 2. Specifically, the moving Defendants argue that it is "highly probable" that Barber, when called to testify either for a deposition or at trial, will invoke his Fifth Amendment and decline to answer any questions relating to the subject matter at the heart of both actions. *Id.* at 4-5. Therefore, the moving Defendants maintain that Barber's invocation of his Fifth Amendment right could potentially have an adverse inference imputed to them which would result in manifest prejudice to their defense of this matter. *Id.* at 5.

The Supreme Court has ruled that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify" *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Additionally, when one party asserts his or her Fifth Amendment privilege, the adverse inference against that party can also be drawn against another associated with the party invoking the privilege. *See Libutti v. United States,* 107 F.3d 110, 121 (2d Cir.

1997); *see also S.E.C. v. McGinn, Smith & Co.,*-- F. Supp. 2d --, 2010 WL 478-317, at *9 (N.D.N.Y. July 7, 2010).

Neither party here cites any case where the issue of whether defendants, none of whom would be the one asserting the Fifth Amendment privilege, can nevertheless move for a stay without being joined by the defendant who has the criminal action pending against him. However, in *Doe v. City of New York,* No. 09 CV 9895, 2010 WL 286643, at *1 (S.D.N.Y. Jan. 19, 2010), defendant City of New York requested a stay of the civil proceeding based on the pending criminal prosecution of certain individual co-defendants. *Doe v. City of New York,*, 2010 WL 286643, at *1. Although the individual defendants did not make the actual request for a stay, the court nevertheless granted the City of New York's request for a stay and held that "[b]ecause Defendants [ ] may invoke their Fifth Amendment right against self-incrimination until the criminal prosecution concludes, denying the stay may impair their Fifth Amendment privilege." *Id.*

Further, in *Volmar*, certain corporate defendants which were not entitled to assert a Fifth Amendment privilege raised an argument similar to the one made by the moving Defendants here. They claimed that if their co-defendant invoked his Fifth Amendment privilege, "they will have little to offer in their own defense and hence will be prejudiced by both the inability to defend themselves adequately and an adverse inference from [defendant's] refusal to testify." *Volmar*, 152 F.R.D. at 41 (internal quotations omitted). The court in *Volmar* elected not to decide the motion based on this argument since it had already held that discovery should be stayed as to those defendants who could assert the Fifth Amendment privilege against self-incrimination. Thereafter, the court granted a complete stay as to all defendants based on an

7

efficiency determination. *Id.* Although the court in *Volmar* did not make a determination regarding the argument presented by the moving Defendants, it denied relief on the lack of standing claim. Based on *Doe* and *Volmar*, the Court concludes that the moving Defendants have standing to argue for a stay of the civil action here based on the impact Barber's invocation of his Fifth Amendment privilege would have upon them.

Lastly, Plaintiff argues that the pending motion is speculative because it remains to be seen whether Defendant Barber will actually assert his Fifth Amendment privilege against self-incrimination if discovery was to go forward. *See* Pls.' Opp. at 2. However, this argument is without merit since it is not necessary for a defendant to actually invoke his Fifth Amendment privilege before the issue becomes ripe for determination whether a stay should be implemented in a civil action. *See Crawford & Sons,* 298 F. Supp. at 319 (finding that "[d]enying the stay *may* undermine the defendants' Fifth Amendment privilege against self-incrimination") (emphasis added); *Volmar,* 152 F.R.D. at 39 ("On the one hand, if either [defendant] invokes his constitutional privilege during civil discovery, not only does this prevent him from adequately defending his position, but it *may* subject him to an adverse inference from his refusal to testify.") (emphasis added)

With these initial issues decided, the Court now turns to the various factors enumerated in *Crawford & Sons* to consider and determine whether this civil action should be stayed pending resolution of the criminal case against Defendant Barber.

### A. Overlap of the Issues

"A stay of civil proceedings is most likely to be granted where the civil and criminal actions involve the same subject matter." *Crawford & Sons*, 298 F. Supp. at 319; *see also Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989) ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues."). After a review of both the civil and felony complaints, it is clear that the claims alleged in the instant civil action and the charges in the criminal proceeding both stem from alleged sexual misconduct including sexual intercourse, inappropriate touching and other sexual advances by Defendant Barber against various female inmates in the NCCC, including the Plaintiffs. Indeed, the actions alleged in the civil Complaint are a direct subset of those alleged in the criminal action, including the fact that the civil action involves five of the seven confidential witnesses mentioned in the felony complaint. *See* Decl. of Joseph E. Macy, in Supp. of Mot. to Stay Action ("Macy Decl.") ¶¶ 5-6 (declaring upon information and belief, each of the plaintiffs in the civil action are complainants and/or witnesses in the criminal action); Ford Aff. ¶ 5 ("Each of the five Plaintiffs in this civil case was among the enumerated 'Confidential Witnesses' referred to in the felony complaint"). As is the case here, where there is such a substantial overlap between the civil and criminal actions, proceeding with the instant civil action while the criminal proceeding remains pending would be "inefficient and wasteful." *See Gustave v. City of New York,* No 10-CV-3314, 2010 WL 3943428 (E.D.N.Y. Oct. 6, 2010). Therefore, the Court finds that this factor weighs strongly in favor of granting a stay of the civil action.

**B. Status of Criminal Case**

Courts consistently hold that "[a] stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct." *Trustees of Plumbers and Pipefitters,* 886 F. Supp. at 1139; *see also In re Par Pharm, Inc.,* 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment"). At the time the Defendants' filed this motion, Defendant Barber had not been indicted. However, a felony complaint had been filed and the evidence was being presented to a Grand Jury. Nevertheless, the fact that Defendant Barber had not been indicted does not automatically tip the scales in favor of denying a motion to stay. *See Parker*, 2007 WL 2462677, at *4; *Brock v. Tolkow,* 109 F.R.D. 116, 120 n.2 (E.D.N.Y. 1985); *but see U.S. Commodity Futures Trading Commission v. A.S. Templeton Group, Inc.,* 297 F. Supp. 2d 531, 535 (E.D.N.Y. 2003) ("Pre-indictment requests for a stay of civil proceedings are generally denied."). The court in *Parker* found that

> a review of the relevant case law indicates that, for purposes of analyzing the "status" factor in a stay inquiry and under the circumstances of this case, the filing of a felony complaint against [defendant] should be treated as the substantial equivalent of an indictment. Indeed, it is well-settled that the significant distinction with regard to this factor is not whether a party has been charged by means of an indictment rather than a criminal complaint, but whether the criminal proceedings have substantially progressed beyond the investigatory stage to the filing of formal charges against a particular defendant, so that there is an imminent likelihood that the defendant will be subject to a criminal proceeding, including a trial, in the very near future.

*Parker,* 2007 WL 2462677, at *4. Here, not only was a felony complaint filed against Defendant Barber, but a Grand Jury has taken action on the matter as well. *See* Ford Aff. ¶ 4. Assistant District Attorney Bernadette K. Ford states that

> Over a four month period beginning in April 2010, the matters contained in this felony complaint, together with additional related charges, were presented to a Nassau County Grand Jury. On July 27, 2010, that Grand Jury took action on the matter as permitted by the New York State Criminal Procedure Law (CPL) 190.60, the nature of which cannot be disclosed at this time pursuant to CPL 190.25-4.(a) absent a written court order, as the record of that Grand Jury action has not yet been filed with the appropriate court. . . . In the ordinary course, the filing is expected to take place within approximately ten days from today.

Ford Aff. ¶ 4. According to the moving Defendants, the District Attorney subsequently provided information that Barber was arraigned on an indictment returned by the Grand Jury on August 31, 2010. *See* Defs.' Reply at 4 n.1. With the added factor of Defendant Barber having been indicted, it is evident that the criminal action has progressed beyond the investigatory stage and that the likelihood of a criminal proceeding in the near future is substantial. *See Trustees of Plumbers*, 868 F. Supp. at 1139 ("A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."). Based on the above status, the Court finds that this second factor also weighs in favor of a stay.

C.   **Private and Public Interests**

Although Plaintiffs neither articulate a particular private interest in proceeding expeditiously nor any specific prejudice that would be caused by a delay, courts recognize that plaintiffs to a civil action have a "strong interest" in their "expeditious resolution." *See Volmar*, 152 F.R.D. at 40; *Trustees of Plumbers*, 886 F. Supp. at 1140 ("Plaintiffs have a legitimate interest in the expeditious resolution of their case"). The Court construes Plaintiffs' contention that substantial amounts of discovery could be conducted without Defendant Barber to be an example of potential prejudice to the Plaintiffs if discovery does not proceed now. *See* Pls.' Opp. at 2. Specifically, Plaintiffs argue that discovery should commence as to the *Monell* and negligence claims asserted against the County of Nassau since these claims turn on the actions of the County in training, supervising and disciplining its employees and not on the specific conduct of Defendant Barber. *Id.* Furthermore, Plaintiffs contend that the deposition of Defendants Sposato and Ravizee could proceed while the criminal case is pending since these two witnesses have no basis to assert a Fifth Amendment privilege.[5] *Id.*

The moving Defendants argue that a stay is necessary to combat the prejudice which would result from a potential adverse inference being imputed against them based upon

---

[5]   Plaintiffs also point to *United States v. Certain Real Prop. and Premises*, 55 F.3d 78 (2d Cir. 1995) in support of their argument that other remedies are available apart from a stay. *See* Pls.' Opp. at 2-3. Plaintiffs rely on a footnotes in that case which provides for a range of approaches in "accommodating the interests of the party asserting the Fifth Amendment, while at the same time respecting opposing parties' right to fair treatment within the litigation." *Certain Real Prop. and Premises*, 55 F.3d at 84 n.6. However, the cited case has little if any relevance to the motion currently pending. *Certain Real Prop. and Premises* involved a defendant who had previously asserted his Fifth Amendment privilege in a civil forfeiture action and later sought to withdraw it. *Id.* at 80. The approaches provided by the court involved deciding whether the defendant there could withdraw his previous assertion of the privilege. *Id* at 84.

Defendant Barber's actions should Barber invoke his Fifth Amendment privilege during discovery in this action. *See* Defs.' Mem. at 2. Further, the moving Defendants argue that they would be prejudiced if a stay is not granted because they would not have access to all the discovery necessary to defend against the allegations in this action. *Id.* Regarding this contention, Defendants maintain that their access to witnesses and documents relevant to the civil action has been largely frustrated because many of the documents were subpoenaed by the Nassau County Grand Jury and are in the possession of the Nassau County District Attorney. *See* Macy Decl. ¶¶ 7-8.

The Court appreciates that a stay will certainly result in inconvenience and delay to the Plaintiffs. However, the Court finds that very little prejudice, if any, accrues to Plaintiffs by staying this action until the resolution of the criminal matter against Defendant Barber.[6] *See In re Cargo Shipping Services,* No. 06-MD-1775, 2010 WL 5027536, at *2 (E.D.N.Y. Dec 3, 2010) (granting stay where "no significant burden would be imposed on the plaintiffs"); *Gustave*, 2010 WL 3943428, at *3 (holding that a stay "will not unfairly prejudice plaintiffs" but rather "merely delay civil discovery, not prevent it entirely").

On the other hand, although the issue directly before the Court is not the Fifth Amendment concerns of a moving Defendant (which courts consistently hold to be a greater consideration than any delay caused to plaintiffs, *see, Volmar*, 152 F.R.D. at 40; *Brock*, 109 F.R.D. at 121), this Court finds that the private interests of those defendants directly and negatively impacted by another defendant's choice to invoke his Fifth Amendment privilege

---

[6] It is worth noting that Plaintiffs waited some time to institute this action as the alleged conduct occurred from August 2007 through March 2009, while the Complaint was only filed in June 2010. *See* Millus Decl. ¶ 4.

13

(resulting in the same adverse inference as to both) also outweigh any delay or inconvenience. Here, all claims against the named Defendants are so intertwined with Defendant Barber that the other Defendants would be subject to the same adverse inference if the civil action continued and Defendant Barber was called upon to testify, but instead invoked his privilege. Further, this determination is supported by a recent holding of our sister court where a defendant successfully moved for a stay of the civil proceeding based on the co-defendants' potential assertion of their Fifth Amendment privilege. *Doe v. City of New York,* 2010 WL 286643, at *1 (granting city of New York's request for a stay despite the fact that the request was not made by those holding the Fifth Amendment privilege).

As a whole, the Court sees a stay in this civil action as beneficial to both parties in that it may well narrow the issues, potentially ignite settlement discussion and save counsel from having to do additional work that would be duplicative. *See Crawford & Sons*, 298 F. Supp. at 319 (finding that a stay would "avoid duplication" as a "conviction or acquittal in the criminal action may negate or buttress some or all of the plaintiffs' claims" and provide the parties with the benefit of "the transcript and rulings in the criminal action"); *Trustees of Plumbers*, 886 F. Supp. at 1140 (finding that the criminal action "may reduce the scope of discovery in the civil case and the evidence gathered during the criminal prosecution can later be used in the civil action"); *Brock,* 109 F.R.D. at 120 (determining that resolution of the criminal case "might reduce the scope of discovery in the civil case or otherwise simplify the issues"); *Parker*, 2007 WL 2462677, at *6 (concluding that "resolution of the criminal case may increase prospects for settlement of the civil case").

Although Plaintiffs maintain that discovery should still proceed against the moving Defendants,[7] Defendant Barber's alleged conduct plays a significant, if not determinative role vis-a-vis the liability of other Defendants. Therefore, it would make little sense to conduct discovery in bifurcated stages. *See Trustees of Plumbers*, 886 F. Supp. at 1141 (finding that "judicial efficiency would be promoted by a stay as to [other defendants] since discovery would not have to proceed in a piece-meal fashion but could proceed simultaneously against all defendants once the stay is lifted"); *Volmar*, 152 F.R.D. at 41 (granting complete stay as to all defendants where defendants covered by the privilege were the central figures in the case whose testimony was most important); *Parker,* 2007 WL 2462677, at *7 (granting complete stay after concluding that those defendants who could not assert a Fifth Amendment privilege "cannot adequately defend themselves without the testimony of [the privileged defendant]; plaintiffs' allegations against the [defendants who could not assert the privilege] are based entirely on the conduct of [the privileged defendant] himself."). Further, in order for the Plaintiffs to assert a § 1983 *Monell* claim against the County of Nassau based on the alleged unconstitutional conduct of its employees (Compl. ¶¶ 164-67, 189-202), the Court would still need to make a determination on the issue of liability of the individual defendants. *See Barrett v. Orange County Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) (finding that "under *Monell* municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants.").

---

[7] Plaintiffs' argument seems to imply that they believe discovery should be stayed as to Barber, the one Defendant who has not joined in this motion.

Finally, a stay of the civil action pending the resolution of the criminal action serves the interests of the Court and public. Regarding the Court, a stay "would promote efficiency and avoid duplication" as the Court "would have the benefit of the transcripts and rulings in the criminal action." *Crawford & Sons*, 298 F. Supp. at 319. Although a stay "may result in the immediate delay in the progress of the civil action[ ], it is likely that the resolution of the criminal action, will, ultimately, further the Court's interest in the efficient disposition of the civil action." *Parker*, 2010 WL 2462677, at *6.

As for the public, its "interest in the fair administration of criminal justice is clearly high" (*see* Ford Aff. ¶ 8) and is served by "preserving the integrity of the criminal case." *Crawford & Sons*, 298 F. Supp. at 319. A stay, therefore, is supported when civil discovery could hamper the ability to prosecute an offender. *See* Ford Aff. ¶ 9. This is particularly significant in a situation where "the criminal defendant was a public employee whose questioned acts directly concern that employment." *Id.* Here, the moving Defendants argue that a stay is necessary to avoid prejudice to the pending criminal prosecution. *See* Defs.' Mem. at 2; *see also* Ford Aff. ¶ 1 (supporting stay "due to the potential that serious prejudice [ ] would inure to the pending criminal prosecution of Defendant "Marc" (hereinafter Mark) Barber and the public interest generally should this civil proceeding and its attendant discovery proceed at this time"). Assistant District Attorney Form affirmed:

> to proceed with civil discovery and litigation at this time would permit Defendant Barber to determine the nature and extent of the potential evidence against him in the criminal investigation and give him access to the identities of various additional witnesses and their possible testimony as well as unredacted examination of all records of whatever kind, giving him the kind of advantages pointedly not

16

> given to the targets of criminal investigations at this stage of the prosecution under the New York State CPL.

Ford Aff. ¶ 6. Moreover, Plaintiffs do not identify any harm to any public interest, thereby falling well below the required standard of serious or immediate injury needed to tip the scales in favor of denying this motion. *See Brock*, 109 F.R.D. at 119 ("If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it."); *Trustees of Plumbers*, 886 F.R.D. at 1140 (holding that "this is not a case where a stay of the case will cause serious or immediate injury to those [public] interests"). Therefore, the public and private interests weigh in favor of staying the civil action here.

## V.   CONCLUSION

For the reasons set forth above, the Court finds that all the relevant factors weigh in favor of staying the civil proceeding. Accordingly, I respectfully recommend to Judge Feuerstein that Defendants' motion to stay this action until the conclusion of the criminal proceeding against Defendant Barber be GRANTED.


Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service. Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 6(a),(e), 72. All objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein. Any request for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the period for filing

objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
January 31, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge