**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MELISSA STAMILE, KENDRA HINDS,
SHANNON PAIZ, COURTNEY BRACCIA,
and JESSICA LITTLE,

                        Plaintiffs,                                  **MEMORANDUM AND
ORDER**

                  - against -                                          CV 10-2632 (AKT)

COUNTY OF NASSAU, MARK BARBER,
individually and in his Official Capacity, C.O.
"JOHN" RAVIZEE, Individually and in his
Official Capacity, SHERIFF MICHAEL
SPOSATO, Individually and in his Official
Capacity, C.O.'s "JOHN DOE" #1-10,
Individually and in their Official Capacities,
(the name John Doe being fictitious, as the
true names are presently unknown),

         Defendants.
-----------------------------------------------------------X
**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiffs Melissa Stamile, Kendra Hinds, Shannon Paiz, Courtney Braccia, and Jessica Little ("Plaintiffs") brought this action against various named and unnamed Defendants pursuant to 42 U.S.C. §§ 1983 and 1988 as well as New York State law alleging violations of their constitutional rights. *See* Am Compl. [DE 36] ¶ 1. The claims arise out of Plaintiffs' allegations that former Nassau County Correctional Center Grievance Officer Mark Barber made unwanted and improper sexual comments and advances and demanded sexual favors in return for contraband and other services. Am. Compl. ¶¶ 21-22, 42-45.

At this time, Defendant Sheriff Michael Sposato ("Sposato") moves to dismiss the Amended Complaint, asserting that there are no facts proffered in the Amended Complaint

which support any of the claims against him. *See generally*, Def. Sposato's Mem. of Law in Support of his Mot. to Dismiss [DE 85] ("Def.'s Mem."). Plaintiffs oppose the motion, asserting that Defendant Sposato had direct involvement in the constitutional violations and turned a blind eye to the harassment of female inmates which resulted in the constitutional violations. Pls.' Mem. of Law in Opp. to Def.'s Mot. to Dismiss [DE 83] ("Pls.' Opp.") at 1, 9. For the following reasons, Defendant's motion is GRANTED in part and DENIED in part.

## II. FACTUAL BACKGROUND

Plaintiffs filed claims against Defendants County of Nassau, Mark Barber, Corrections Officer "John" Ravizee, Sheriff Michael Sposato, and "John Doe #1-10" pursuant to 42 U.S.C. §§ 1983 and 1988 alleging violations of their constitutional rights. *See generally* Am. Compl. At the time of the acts giving rise to the allegations in the Amended Complaint, the Plaintiffs were female inmates at the Nassau County Correctional Center ("NCCC"). Am. Compl. ¶ 16. Defendant Barber served as a Grievance Officer at NCCC receiving complaints from inmates about medical care and quality-of-life issues. *Id.* ¶¶ 17-18. Plaintiffs allege that from August 2007 through March 2009, Defendant Barber abused his powers as Grievance Officer and engaged in inappropriate relationships with female inmates, including the Plaintiffs. *Id.* ¶ 20. Specifically, the Amended Complaint asserts that Barber provided contraband and services to the inmates, and, in return, demanded that the inmates perform sexual favors for him. *Id.* ¶¶ 21-22. Each Plaintiff asserts particular instances where Defendant Barber made unwanted and improper sexual comments and advances (*id.* ¶¶ 42-45, 62-63, 78-82, 124-128, 133-134, 140-142) and engaged in inappropriate touching (*id.* ¶¶ 87, 98-104, 129-131) as well as sexual intercourse (*id.* ¶ 64). Stemming from his conduct involving the Plaintiffs and several other inmates, Defendant Barber was convicted of five felonies and 56 misdemeanors in the County Court, Nassau County,

and is currently serving a term of imprisonment of 5 1/3 to 8 years in New York State. *See* Def.'s Mem. at 2; Am. Compl. ¶¶ 166-173.[1]

Plaintiffs further aver that many other staff members at NCCC knew about Defendant Barber's conduct, but simply looked the other way and did nothing. *Id.* ¶ 28. In that context, Plaintiffs allege that Barber's misconduct was a reflection of a larger, systemic failure of top-level prison officials to properly respect and safeguard the rights of female inmates. *Id.* ¶¶ 29-30.

Plaintiffs' Amended Complaint asserts causes of action under Sections 1983 and 1988 for: (i) cruel and unusual punishment in violation of the Eighth Amendment; (ii) unlawful bodily searches in violation of the Fourth Amendment; and (iii) privacy violations in contravention of the Fifth and Fourteenth Amendments. *Id.* ¶¶ 174-176, 188, 214-216. Plaintiffs also assert a claim for municipal liability against the County of Nassau, along with various New York State law claims, including assault, battery, intentional infliction of emotional distress, negligence, negligent supervision, and negligent hiring, training, and retention. Am. Compl. ¶¶ 199-212, 225-255.

As to Sheriff Sposato, Plaintiffs assert the following claims: (i) supervisory liability under Section 1983, including deliberate indifference; and (ii) negligent supervision under New York State law. Plaintiff also alleges that

> 32. . . . SHERIFF SPOSATO himself had engaged in misconduct which was remarkably similar to the misconduct committed by defendant Barber.
>
> 33. Specifically, SHERIFF SPOSATO had sent love notes hidden in food trays to various female inmates at NCCC. This

---

[1] Two civil complaints have also been filed by plaintiffs who allege abuse by Defendant Barber while serving time at the NCCC. *See Erdogan v. County of Nassau et al.*, No. 10-cv-5837; *Bridgwood v. County of Nassau et al.*, No. 10-cv-830.

> grossly improper conduct was witnessed by at least two staff members at NCCC, Corporal Daniel Donahue and Officer Sandra Rottcamp.
> 
> . . . .
> 
> 180. . . . Further, several male staff members, including defendant SHERIFF SPOSATO himself, have propositioned female inmates and asked to see them outside of jail.

*Id.* ¶¶ 32-33, 180. Defendant Sposato moves to dismiss the Amended Complaint, arguing, *inter alia*, that Plaintiffs have not sufficiently alleged he was personally involved in the purported constitutional violations at issue. *See generally*, Def.'s Mem. Subsequent to the filing of the motion to dismiss, the parties filed a Consent to the Jurisdiction of a U.S. Magistrate Judge and the case was subsequently assigned to this Court. DE 40, 44. This matter is now under review.

## III.   LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Reed v. Garden City Union Free School Dist.*, --- F. Supp. 2d ---, 2013 WL 6645007, at *2 (E.D.N.Y. Dec. 16, 2013); *Camlin Ltd. v. CMB Additives LLC*, No. 07-CV-4364, 2012 WL 5928443, at *1 (E.D.N.Y. Nov. 19, 2012). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546, 127 S. Ct. 1955, 1959 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that,

4

because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*; *Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, No. 09-CV-8285, 2010 WL 3910590, at *4 (S.D.N.Y. Sept. 29, 2010) ("A complaint is inadequately pled 'if it tenders naked assertions' devoid of 'further factual enhancement.'") (quoting *Iqbal*, 129 S.Ct. at 1949). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

## IV. DISCUSSION

### A. Section 1983 Supervisory Liability

Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege conduct attributable to a person acting under color of state law that deprived the plaintiff of a right secured by the Constitution or laws of the United States. *See Feingold v. N.Y.*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and

5

(2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges. *See Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004); *Annis v. Cnty. Of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Bristol v. Queens Co.*, No. CV 09-5544, 2013 WL 1121264, at *5 (E.D.N.Y. Feb. 27, 2013); *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.") (citation omitted).

Here, Plaintiffs have alleged violations of their Fourth, Fifth, Eighth, and Fourteenth Amendment rights. *See generally* Am. Compl. However, because *respondeat superior* does not apply in Section 1983 actions, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffit v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)); *Spavone v. N.Y. State Dep't of Correctional Servs.*, 719 F.3d 127, 135 (2d Cir. 2013). Along these lines, an individual defendant cannot be held liable for damages simply because he or she holds a supervisory position. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (finding that "a defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."); *Armstead v. N.Y. City Police Dep't*, No. 13 CV 891, 2013 WL 1148803, at *4 (E.D.N.Y. Mar. 19, 2013)

However, the Second Circuit has held that liability may attach if the supervisor (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of

inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d. Cir. 1995); *see Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986). Notably, the Supreme Court decision in *Iqbal* found that "a plaintiff must plead that each defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 675. Further, the Supreme Court in *Iqbal* rejected the respondent's argument that a supervisor's "mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." 556 U.S. at 677.

Some district courts have subsequently found that *Iqbal* has narrowed the grounds upon which supervisors are liable. *See, e.g., Rahman v. Fischer*, No. 08 Civ. 4368, 2010 WL 1063835, at *4 (S.D.N.Y. Mar. 22, 2010); *Bouche v. City of Mount Vernon*, No. 11 Civ. 5246, 2012 WL 987592, at *8 (S.D.N.Y. Mar. 23, 2012). In fact, several courts have opined that only the first and third factors have survived. *See Bouche*, 2012 WL 987592, at *8 (finding only first and third factors of test for supervisor liability survive); *Spear v. Hugles*, No. 08 Civ. 4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009) (same); *Bellamy v. Mount Vernon Hosp.*, 2009 WL 1835939, *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal's* muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred."); *accord Newton v. City of New York*, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived the Supreme Court's recent decision in *Ashcroft v. Iqbal.*"). The Second Circuit, however, has not yet ruled on the validity of such interpretations. Therefore, the Court will examine all five prongs of the analysis, keeping the considerations outlined in *Iqbal* in mind.

*1.     Direct Involvement in the Constitutional Violations*

With respect to the first prong, Defendant Sposato maintains that he did not directly participate in the alleged constitutional deprivations, and that Plaintiffs' allegations in this regard are conclusory and do not contain any supporting factual averments. *Id.* at 5-6. Plaintiffs, on the other hand, allege that Sposato had "direct involvement in the constitutional violations because he personally violated inmates['] rights when he engaged in sexual misconduct similar to th[at] of B[a]rber's." Pls.' Opp. at 1.

According to the Plaintiffs, Sheriff Sposato (i) sent love notes to (unidentified) female inmates and (ii) "propositioned" (unidentified) female inmates. *Id.* ¶¶ 32-33, 180. Even assuming that these allegations are true for purposes of Plaintiffs' argument, Plaintiffs have not alleged that Sheriff Sposato was personally involved in the specific constitutional violations set forth in the Amended Complaint — for example, sexual assault or rape, or any of the other constitutional violations committed by Defendant Barber. Moreover, the Amended Complaint does not allege that Sheriff Sposato propositioned the Plaintiffs themselves or sent them love notes; rather, these allegations against Sposato relate to unspecified, unnamed inmates. Finally, Plaintiffs have not shown that sending love notes or propositioning inmates (as unsavory as these acts might be) — without more — rises to the level of a constitutional violation. *See, e.g.*, *Toole v. Connell*, No. 9:04-CV-0724, 2008 WL 4186334, at *7 (N.D.N.Y. Sept. 10, 2008) (actions of corrections officer who sexually propositioned inmate on multiple occasions and shook his buttocks at him did not rise to the level of constitutional significance); *accord Snyder v. Whittier*, No. 9:05-CV-01284, 2009 WL 691940, at * 12 (N.D.N.Y. Mar. 12, 2009) ("[M]ere verbal harassment of an inmate by a corrections worker, as unprofessional as such conduct may be, does not rise to a level of constitutional significance.") (collecting cases). As such, the Court

finds that the proffered acts stated here simply do not adequately allege that Sheriff Sposato was directly involved in the constitutional violations giving rise to the Amended Complaint in this action. However, these averments are relevant to the establishment of a "policy or custom," as discussed below.

### 2. *Knowledge of the Constitutional Violations*

Defendant Sposato argues that there are no allegations in the Amended Complaint that he was ever aware, directly or indirectly, of Barber's illegal actions. Def.'s Mem. at 4. Indeed, the Plaintiffs do not specifically allege that *Sheriff Sposato* was aware of the violations. Rather, they allege that "Defendants" knew that Barber was inappropriately touching and sexually assaulting the Plaintiffs. Am. Compl. ¶ 193. This blanket statement is not sufficient to support a finding of supervisory liability against Sheriff Sposato individually. *See Bertuglia v. City of N.Y.,* 839 F. Supp. 2d 703, 723 n. 4 (S.D.N.Y. 2012) (dismissing complaint in part because allegations were made against defendants as a group, finding that "[i]t is insufficient for the plaintiffs to rely on group pleading against [these defendants] without making specific factual allegations [against them]."); *Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) (same); *Elmer v. Fischer*, No. 09-CV-650, 2013 WL 66258, at *4 (W.D.N.Y. Dec. 16, 2013) (dismissing allegations against supervisors where plaintiff failed to attribute the alleged conduct to any particular defendant and therefore no personal involvement was alleged). The Court finds that, at least with respect to Sheriff Sposato, this allegation is not sufficiently supported by facts. Here, Plaintiffs have not included any additional factual detail to support their assertions that Sheriff Sposato knew about the constitutional violations. As such, the Court finds that Plaintiffs have not adequately demonstrated supervisory liability under this prong. *See Iqbal*, 129 S.Ct. at 1949; *Brookfield*, 2010 WL 3910590, at *4 ("A complaint is inadequately pled if it tenders naked

assertions devoid of further factual enhancement.") (citations and quotations omitted); *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 191 (2d Cir. 2010) ("Conclusory allegations that the defendant violated the standards of law do not satisfy the need for plausible factual allegations."); *Paulin v. Figlia*, 916 F. Supp. 2d 524, 536 (S.D.N.Y. 2013) ("Plaintiff does not augment his pleading or argument with facts indicating Fredericks knew of either [defendants'] use of excessive force, or supporting supervisor liability under another theory. As a result, his conclusory statements . . . without facts to support them, are insufficient to attach supervisory liability.").

### 3. *Deliberate Indifference*

As to this third prong, Defendant Sposato further argues that he was not deliberately indifferent to the constitutional violations because he was unaware they were taking place. Def.'s Mem. at 9. In order for a deliberate indifference claim to be viable, a plaintiff must allege that the supervisor was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. *Farmer v. Brennan*, 511 U.S. 825, 837-38, 114 S.Ct. 1970, (1994) (noting that deliberate indifference inquiry is subjective, requiring awareness of facts from which inference could be drawn that substantial risk of serious harm existed); *Poe v. Leonard*, 282 F.3d 123, 142 (2d Cir. 2002) (holding that supervisor's liability depended on showing that supervisor "knew or should have known that there was a high degree of risk that [subordinate would commit the violative conduct], but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury"); *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (official must exhibit deliberate indifference to the rights of others by "failing to act on information indicating that unconstitutional acts were occurring").

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011) (alteration in original) (quoting *Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382 (1997)).

Here, Plaintiffs have not sufficiently alleged that Sheriff Sposato knew about the constitutional violations committed by Defendant Barber. Nor has Plaintiff sufficiently alleged that Sposato was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Plaintiffs argue that "logic dictates" that Sposato did nothing to punish unconstitutional behavior in his subordinates, "not because he was unaware of their misconduct, but because he was engaged in these behaviors himself." Pls.' Opp. at 11. However, the only allegation in the Amended Complaint alleging deliberate indifference against Sheriff Sposato specifically is Plaintiffs' conclusory statement that the constitutional violations occurred "solely as a result of the deliberate indifference exhibited by defendants NASSAU COUNTY and SHERIFF SPOSATO." Am. Compl. ¶ 177. Plaintiffs ask the Court to take a giant leap, premised on an unsupported foundation, that because Sposato himself purportedly engaged in certain conduct, he had to know about Defendant Barber's conduct. This allegation is simply not enough to withstand a motion to dismiss. *Iqbal*, 556, 556 U.S. at 678 ("[T]hreadbare recitals of the elements of a cause of action . . . supported by mere conclusory statements, do not suffice); *Chavis v. Chappius*, 618 F. Supp. 2d 354, 360 (S.D.N.Y. 2013) (same); *Barnes v. Henderson*, 490 F. Supp. 2d 313, 319 (W.D.N.Y. 2007) (Complaint offered nothing more than conclusory assertions and "no *facts* in support of that assertion."); *White v. Clark*, No. 9:12-CV-0986, 2012 WL 5877160, at *10 (N.D.N.Y Nov. 20, 2012) (no personal involvement where plaintiff alleged in a "wholly conclusory fashion" that defendants exhibited deliberate indifference to staff

misconduct"); *Bellamy,* 2009 WL 1835939, at *6 (plaintiff's "conclusory allegations that [defendant] must have known about [his plight] [were] not enough to impute section 1983 liability.").

### 4. *Gross Negligence and Policy or Custom*

Plaintiffs maintain that, even assuming Sheriff Sposato did not know that Barber was engaged in the unconstitutional acts, Sposato's gross negligence in supervising Barber allowed those acts to continue. Pls.' Opp. at 11. Further, Plaintiffs contend that Sposato fostered a "blind eye policy" whereby staff members did not report acts of misconduct against female inmates — including misconduct committed by Sposato himself. *Id.* at 9. Indeed, Plaintiffs argue, Sposato's own conduct towards female inmates evidences a larger policy or custom of inappropriate treatment of female inmates leading to the constitutional violations alleged in the Amended Complaint — and Barber's misconduct was merely a reflection of a larger, systematic failure of top-level prison officials to properly respect and safeguard the rights of female inmates. *Id.* at 9-10. Defendant Sposato counters that Plaintiffs' allegations that he engaged in inappropriate behavior are "amorphous" and in any case untrue. Further, Sposato's counsel points out that Barber was engaging in criminal behavior with respect to another Plaintiff in a related case even before Sposato was appointed Sheriff in 2007. Def.'s Mem. at 3-4. Defendant contends that, even assuming the allegations against Sposato are true, the leap between the delivery of a note to an inmate and Barber's criminal actions is "beyond preposterous." *Id.* at 7.

The Second Circuit has held that "[a]lthough 'gross negligence' and 'deliberate indifference' at times are used interchangeably, they represent different degrees of intentional conduct on a continuum." *Poe*, 282 F.3d at 140 n.14 (citing *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 453 n. 7 (5th Cir.) (noting that "gross negligence" and "deliberate indifference"

"involve different degrees of certainty, on the part of an actor, that negative consequences will result from his act or omission;" while "the former is a 'heightened degree of negligence,' the latter is a 'lesser form of intent'"). The Second Circuit has "often equated gross negligence with recklessness, and ha[s] defined it as the 'kind of conduct . . . where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.'" *Poe*, 282 F.3d at 140 n.14 (*Bryant v. Maffucci,* 923 F.2d 979, 985 (2d Cir. 1991)). As a general proposition, at least before *Iqbal*, Sposato may be found liable if, in supervising Barber, he exhibited gross negligence to a high risk that Barber would violate Plaintiffs' constitutional rights and his neglect caused Barber to violate Plaintiffs' constitutional rights. *See Poe*, 282 F.3d at 140. However, as outlined above, the Supreme Court's decision in *Iqbal* casts some doubt on this standard in that there, the Court found no supervisory liability attached even where it was alleged that the supervisor *knew* about the unconstitutional conduct. *Iqbal*, 556 U.S. 662, 677. In any case, it seems clear even after *Iqbal* that Sposato may be found liable if he created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (citing *Colon*, 58 F.3d at 873).

In the Amended Complaint, Plaintiffs alleges that Defendants (i) disregarded and failed to investigate the improper conduct of Barber, despite multiple instances of misconduct; (ii) failed to take appropriate disciplinary action against Barber; (iii) failed to take appropriate measures to safeguard female inmates against Barber, despite clear indications that such measures were needed; and (iv) failed to properly train employees at NCCC as to their affirmative duties, obligations and responsibilities to report misconduct by fellow staff members at NCCC. Am. Compl. ¶ 178. Again, Plaintiffs maintain that Sposato also propositioned female

inmates and sent them love notes, and that at least two staff members, Corporal Daniel Donahue and Officer Sandra Rottcamp, knew about this behavior and did nothing – evidence of the existence of a custom or policy fostering the unconstitutional practices with respect to the health, safety, and welfare of female inmates at NCCC. Am. Compl. ¶¶ 180-81. Plaintiffs also allege that there were "multiple" staff members at NCCC who "absolutely knew" about Barber's improper conduct, and observed Barber visiting inmates at inappropriate hours and inappropriate locations in the jail, yet did nothing. *Id.* ¶ 184. As further evidence of the "blind eye" policy, Plaintiffs assert that Nassau County completely and utterly failed to punish corrections officers who did not report the misconduct to their superiors. *Id.* ¶ 182. Although the factual detail here is somewhat thin, the Court finds that these allegations are sufficient to state a claim for supervisor liability under the *Iqbal* standard and that Plaintiffs should be given the opportunity to further develop this issue in discovery. *Iqbal*, 129 S.Ct. at 1950 (Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Further, with respect to Defendant's argument that the constitutional violations were occurring before Sposato became Sheriff, Sposato may still be found liable for allowing such a policy to continue. *Grullon*, 720 F.3d at 139; *Colon*, 58 F.3d at 873. Accepting the allegations as true for the purposes of this motion, even if the "gross negligence" prong is no longer cognizable under *Iqbal*, Plaintiffs have adequately alleged supervisory liability under the policy or custom prong, which courts have recognized is still in force after *Iqbal*, in order to withstand dismissal of this claim on a Rule 12(b)(6) motion. *See,* Section IV(A), *supra*.

    **B.**     **New York State Law, Negligent Supervision**

In addition to their federal cause of action, Plaintiffs advance a negligent supervision claim against Sheriff Sposato under New York State law. The Court could retain supplemental

jurisdiction over this claim under 28 U.S.C. § 1367(a). "Under New York law, a plaintiff asserting a claim for negligent supervision must prove: (1) the tortfeasor and defendant were in an employee-employer relationship; (2) the employer knew or should have known of the employee's propensity for the tortious conduct; and (3) the tort was committed on the employer's premises or with the employer's chattels." *Papelino v. Albany College of Pharmacy of Union Univ.*, 633 F.3d 81, 94 (2d Cir. 2011) (citing *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998)); *Ross v. Mitsui Fudosan, Inc.,* 2 F. Supp. 2d 522, 533 (S.D.N.Y. 1998). Many cases discussing this standard appear to require actual knowledge of the unconstitutional practices, rather than simple knowledge of inappropriate behavior. *See S.C. v. N.Y.C Dep't of Educ.*, 97 A.D.3d 518, 949 N.Y.S.2d 71 (2012) (finding no claim for negligent supervision of a teacher who sexually abused a student despite supervisors knowing that teacher spent time alone with the student in the teacher's home, that the teacher and student ate lunch together regularly, and where the supervisor had directed the teacher to stay away from the student in the past); *Steinborn*, 9 A.D.3d at 534 (holding that, "[e]ven assuming defendants were aware of [the abuser's] alleged improper use of alcohol and cigarettes [around minors], we find these allegations, although relevant to [abuser's] qualifications as a scout leader, insufficient as a matter of law to constitute notice to defendants that there was a danger of [abuser] sexually assaulting plaintiffs"); *see also Hahne v. State of N.Y.*, 290 A.D.2d 858, 859, 736 N.Y.S.2d 761 (2002) (holding that "there is utterly no record evidence of [defendant's] propensity to engage in the type of conduct complained of, which is an essential predicate for the imposition of liability on a theory of negligent supervision"); *Osvaldo D. v. Rector Church Wardens and Vestrymen of the Parish of Trinity Church of N.Y.*, 38 A.D.3d 480, 480 (1st Dep't 2007) (fact that employee used drugs in the past, made inappropriate expenditures, and hired ex-convicts was insufficient

15

to show that employer negligently supervised employee with respect to an alleged sexual assault); *Lisa P. v. Attica Cent. School Dist.*, 27 A.D.3d 1080, 810 N.Y.S.2d 772 (4th Dep't 2006) (finding that defendant's actual or constructive notice that employee slept in a room with boys under his supervision does not establish the requisite knowledge or notice of employee's propensity or likelihood of sexually abusive behavior).

As previously discussed, the Amended Complaint's allegations that Sheriff Sposato had actual or constructive knowledge of Barber's propensity to engage in inmate sexual abuse and rape are conclusory. Under the precedents discussed here, Plaintiffs need to allege (in more than a conclusory fashion) that Sposato was aware or should have been aware of the *constitutional violations* and did nothing to prevent them. Plaintiffs have simply not met this standard. "Given the absence of factual allegations addressing the 'knowledge' element of the negligent supervision claim, it is clear that [the allegations cannot] withstand a motion to dismiss under Rule 12(b)(6)." *Daniels v. Loizzo*, 174 F.R.D. 295, 299 (S.D.N.Y. 1997); *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (finding that lower court appropriately dismissed negligent supervision claims where plaintiff failed to adduce evidence sufficient to show that defendants were aware of their employee's propensity to assault minors or otherwise to engage in sexual misconduct); *Grimes v. Fremont General Corp.*, 933 F. Supp. 2d 584, 609 (S.D.N.Y. 2013) (dismissing claims for negligent supervision under New York law where allegations of employee's propensity for fraudulent conduct were "wholly conclusory"); *A.B. v. Staropoli*, 929 F. Supp. 2d 266, 283-84 (S.D.N.Y. 2013) (finding no evidence that defendant knew or should have known of its employee's propensity to engage in sexual misconduct with a minor, noting that "[a] claim for negligent supervision cannot succeed without evidence of any prior conduct similar to the unanticipated injury-causing act") (internal citations and quotations omitted);

*Haybeck v. Prodigy Serv. Co.*, 944 F. Supp. 326, 332 (S.D.N.Y. 1996) (dismissing claims for negligent supervision because plaintiff failed to allege that defendant knew about employee's tortious conduct).

## V. CONCLUSION

Based on the foregoing analysis, Defendant Sposato's motion to dismiss the Amended Complaint is GRANTED, in part, and DENIED, in part. Plaintiff has alleged sufficient facts to support a claim of supervisory liability under Section 1983. However, Plaintiffs' claim for negligence under New York State law is dismissed.

**Counsel for Defendant Sposato is directed to serve a copy of this Order upon the pro se Defendant Barber forthwith by first-class mail and certified mail, return receipt requested, and to file proof of service on ECF.**

                                        **SO ORDERED.**

Dated: Central Islip, New York
         March 25, 2014

                                      /s/ A. Kathleen Tomlinson
                                      A. KATHLEEN TOMLINSON
                                      U.S. Magistrate Judge